## May C. Delaney, Appellant, v. McNeil & Higgins Company and Charles I. Ross, Trustee, Appellees.

### Gen. No. 20,980.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed December 8, 1915. Rehearing denied December 21, 1915. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Bill by May C. Delaney, complainant, against McNeil & Higgins Company, a corporation, and Charles I. Ross, trustee, defendants, in the Superior Court of Cook county, praying an accounting. From a decree dismissing the bill for want of equity and granting the prayer of the cross-bill, complainant appeals.

The facts are these: May C. Delaney, the complainant, on March 3, 1911, acquired a grocery and market from her brother-in-law, Patrick J. Delaney, a brother of her husband. The complainant's husband, George M. Delaney, had been conducting a store for a number of years prior to March 3, 1911, and purchased supplies from McNeil & Higgins Company, one of the defendants. He had been in ill health, and in order to convey his property and business to his wife, without going through the Probate Court, he transferred them to his brother, Patrick J. Delaney, and on the same day, March 3, 1911, Patrick J. Delaney transferred, through proper instruments of conveyance, all the property to the complainant. At the time of the transfer, George M. Delaney was indebted to the defendant in the sum of $2,187.39. A few days after the transfer, complainant began to conduct the business, and on March 9, 1911, began purchasing merchandise from the defendant, and continued so to do regularly until January, 1913. About March 9, 1911, a representative of the defendant called up the complainant on the telephone at her place of business,

and inquired if she had taken over her husband's business. He testified that the person answering the telephone stated that she was Mrs. Delaney, and that she had taken over her husband's property and business. (Her husband died June 11, 1911.) She then promised to pay the balance due from her husband to the defendant, not all at once, but some every month, and that she would send a check in a short time. Complainant testified that she never talked with the witness over the telephone about this matter. The witness did not recognize the voice, but afterwards, having met the complainant several times, he testified that it was the complainant with whom he talked on the telephone. A few days afterwards, complainant sent defendant a check for $500 on account. At that time she had purchased but $200 worth of merchandise from the defendant. The account was carried on the books of the defendant all the time in the name of complainant's husband, and every month statements were sent to her showing the balance due, and in each statement was included the balance due from her husband. The defendant had been pressing for payment from time to time, and on January 15, 1913, complainant went to defendant's place of business, and executed a note for $3,577, due ninety days after date, with interest at seven per cent., and secured the same by a trust deed on the real estate in question. This amount was the balance due at that date for all goods purchased by complainant or her husband from the defendant. At that time there was a balance due on account of the goods purchased by the complainant from the time she conducted the business, in excess of what she had paid, of $1,347.54. Complainant contends that she at no time promised to pay the debt of her husband, and that she did not know she was signing a trust deed and note, but thought it was a schedule of her assets; that the note and trust deed were obtained from her by means of fraud and deceit.

On October 23, 1913, she filed her bill of complaint in the Superior Court against the defendant. The bill prayed for an accounting, alleging that she had tendered the balance due defendant, $1,347.54, which was refused, and asking that the note and deed be delivered up and canceled. The defendant answered, denying fraud and deceit, and averring that all matters were fully explained to and understood by the complainant. On January 15, 1913, the defendant filed a cross-bill, asking that the mortgage be foreclosed.

The original bill came on for hearing before the chancellor, who found that the charge of fraud and deceit had not been sustained; that the equities were with the defendant, and decreed that unless the amount due the defendant on the note was paid within twenty days, the defendant would be entitled to proceed with the hearing on its cross-bill. The payment not having been made, evidence was heard in open court on the cross-bill and answer.

GEORGE V. MCINTYRE, for appellant.

MATHER & HUTSON, for appellees; WILLIAM A. SHEEHAN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

## Abstract of the Decision.

1. EVIDENCE, § 173*—*when telephone conversations admissible.* Telephone conversations held between a witness and one who answers the telephone in another's place of business are competent although the voice of the person speaking cannot be recognized by the witness, for the reason that one who places himself in connection with the telephone system through an instrument installed in his place of business invites communication with him through that channel in regard to his business, such conversations being competent on the same ground as interviews between a customer and an unknown clerk in charge of a shop in regard to the business carried on there.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. FRAUDS, STATUTE OF, § 2*—*when Statute of Frauds not applicable to instrument in writing.* Where the instrument sought to be enforced is in writing the Statute of Frauds has no application, though such instrument may have been given in pursuance of an oral agreement to pay the debt of another.

3. FRAUD, § 115*—*when evidence insufficient to establish fraud.* In a bill seeking relief against a note and trust deed on the ground of fraud, a finding that there was no fraud *held* sustained by the evidence.

4. APPEAL AND ERROR, § 1395*—*when findings of chancellor will not be disturbed.* Where a bill seeks relief against a note and trust deed on the ground of fraud and the evidence as to fraud is conflicting, the finding of the chancellor, after seeing and hearing the witnesses, that the allegation of fraud was not sustained by the evidence will not be set aside by a court of review unless manifestly against the weight of the evidence.

5. FRAUD, § 112*—*sufficiency of evidence to establish fraud.* Where fraud is relied on it must be proved by clear and convincing evidence.

6. FRAUD, § 87*—*not presumed.* Fraud is never presumed.

7. CANCELLATION OF INSTRUMENTS, § 37*—*when trust deed will not be canceled, but enforced on cross-bill.* Where a bill sought cancellation of a note and trust deed and where a cross-bill prayed the enforcement of the trust deed, a decree that unless complainant within twenty days paid the amount of the note secured by the trust deed sought to be enforced defendant might go to hearing on its cross-bill, *held* not inequitable although the debt for which such note was given was in part the debt of another, it appearing that complainant had received a gift of such other person's business, which she thereafter carried on for her own benefit, and it also appearing that in consideration of executing the note complainant had been given further time in which to make payment, and that further credit had also been extended to her in consideration thereof.